## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CRISTIAN IOSZPE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 5:25-cv-00098-SLP** |
| | § | |
| **UNIFIN, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>DEFENDANT, UNIFIN, INC.'S,</u>
## <u>BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

Whitney L. White
TX Bar No. 24075269
*Admitted Pro Hac Vice*
SESSIONS, ISRAEL & SHARTLE, LLC
5700 Granite Pkwy., Suite 260
Plano, Texas 75024
Telephone: (214) 741-3001
Facsimile: (214) 741-3098
Email: wwhite@sessions.legal

Kerry R. Lewis (OBA #16519)
Rhodes, Hieronymus, Jones, Tucker &
Gable, PLLC
P.O. Box 21100
Tulsa, Oklahoma 74121
Telephone: (918) 582-1173
Facsimile: (918) 592-3390
Email: klewis@rhodesokla.com

*Attorneys for Defendant,*
*Unifin, Inc.*

**TABLE OF CONTENTS**

TABLE OF CONTENTS...........................................................................................i

TABLE OF AUTHORITIES .................................................................................ii

I.    STATEMENT OF MATERIAL FACTS TO WHICH MOVANT CONTENDS NO GENUINE DISPUTE EXISTS ......................................................................... 3

II.   PROCEDURAL HISTORY AND STAGE OF THE PROCEEDINGS..................... 9

III.  SUMMARY OF ARGUMENT.................................................................... 13

IV.   ARGUMENT AND AUTHORITIES............................................................ 14

   A.    Plaintiff's TCPA Claim Fails.............................................................. 15

   B.   Plaintiff's Intrusion Upon Seclusion Claim Fails.................................... 21

V.    CONCLUSION AND PRAYER .................................................................. 25

CERTIFICATE OF SERVICE ............................................................................ 26

i

## TABLE OF AUTHORITIES

**Cases**

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998)....................................................14

*Ammons v. Diversified Adjustment Serv.*, No. 2:18-cv-06489-ODW, 2019 U.S. Dist. LEXIS 175842 (C.D. Cal. Oct. 9, 2019) .......................................................................................22, 24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .........................................................14, 15

*Anthony v. Nat'l Republican Cong. Comm.*, No. 24-3052, 2025 U.S. App. LEXIS 24961 (3d Cir. 2025)...........................................................................................................................................17

*Arora v. Midland Credit Mgmt., Inc.*, No. 15-cv-6109, 2023 U.S. Dist. LEXIS 4189 (N.D. Ill. Jan. 10, 2023).........................................................................................................................18

*Basham v. Midland Funding, LLC*, No. 4:15-cv-30, 2022 U.S. Dist. LEXIS 69857 (E.D. Mo. Apr. 15, 2022), *affirmed* 2023 U.S. App. LEXIS 283 (8th Cir. 2023)....................................18

*Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976 (10th Cir. 1993)...............................15

*Boudreaux v. Swift Transp. Co.*, 402 F.3d 536 (5th Cir. 2005)....................................................14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).....................................................................14, 15

*Facebook v. Duguid*, 592 U.S. 395 (2021).................................................................................17

*Gilmore v. Enogex, Inc.*, 1994 OK 76, 878 P.2d 360 (Okla. 1994).............................................21

*Marseglia v. JP Morgan Chase Bank*, 750 F.Supp.2d 1171 (S.D. Cal. 2010)............................23

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).................................................................16

*Mousavi v. John Christner Trucking, LLC*, 487 F. Supp. 3d 1194 (N.D. Okla. 2020)................21

*Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057 (10th Cir. 1998) ...........................................15

*Oppenheim v. I.C. Sys.*, 695 F.Supp.2d 1303 (M.D. Fla. 2010).................................................23

*Salmon v. CRST Expedited, Inc.*, No. 14-CV-0265-CVW-TLW, 2016 U.S. Dist. LEXIS 670 (N.D. Okla. Jan. 4, 2016), *reconsideration denied* .......................................................13, 22, 24

*Trupia v. Bob More Enters., L.L.C.*, No. CIV-25-0568-HE, 2025 U.S. Dist. LEXIS 280435 (W.D. Okla. Aug. 5, 2025), *affirmed* 2026 U.S. App. LEXIS 15379 (10th Cir. 2026) 16, 17, 18

**Statutes**

47 U.S.C. § 227...............................................................................................................................16

Fed. R. Civ. P. 56......................................................................................................................14, 15

**Other Authorities**

Tel. Consumer Prot. Act of 1991, Pub L. No. 102-243, § 2(9) (1991).........................................16

Defendant Unifin, Inc. (Unifin), through counsel and pursuant to Federal Rule of Civil Procedure 56, Local Rule LCvR7.1 and LCvR56.1, and the Court's Scheduling Order [doc. 29], submits this Brief in Support of its Motion for Summary Judgment, and respectfully shows the Court as follows:

## I.      STATEMENT OF MATERIAL FACTS TO WHICH MOVANT CONTENDS NO GENUINE DISPUTE EXISTS

1.      On September 13, 2024, Unifin's creditor-client placed a debt incurred by a third-party debtor, C.W., with Unifin for collection attempts. *See* Declaration of Dan Beam (hereinafter the "Beam Dec.") at ¶ 12, and **Exhibit 1**, Unifin's redacted[1] Account Notes produced in discovery at Bates Nos. Unifin0001 – Unifin0005 (hereinafter the "Account Notes").

2.      On or about September 23, 2024, Unifin received search results from TransUnion TLO identifying telephone number 405-519-5249 (hereinafter the "-5249 Number") as associated with the third-party debtor, C.W. Beam Dec. at ¶ 13, and **Exhibit 2**, redacted TransUnion TLO Results produced in discovery at Bates No. Unifin0006.

3.      Unifin obtained the -5249 Number from TransUnion, and not from a random or sequential number generator. Beam Dec. at ¶¶ 13-14; Ex. 2.

4.      Unifin does not place calls to phone numbers generated randomly or sequentially. Beam Dec. at ¶ 14.

---

[1] Unifin's Account Notes and TLO Results are redacted to protect confidential and proprietary financial information and personally identifying information of the third-party debtor who is not a party in this action.

5.    Unifin only places calls attempting to reach debtors for whom they have open and active accounts. Beam Dec. at ¶ 14.

6.    Unifin attempted 9 calls to the -5249 Number between September 25, 2024 and November 21, 2024 attempting to reach the third-party debtor to collect the debt owed to Unifin's creditor-client. Beam Dec. at ¶ 15; Ex. 1.

7.    Unifin's call attempts to the -5249 Number occurred on the following dates with call results as follows:

      a.    September 25, 2024, result: dead air/triple tone;

      b.    October 2, 2024, result: dead air/triple tone;

      c.    October 11, 2024, result: third party contact;

      d.    October 18, 2024, result: tel/# disconnected;

      e.    October 23, 2024, result: answering machine, no message left;

      f.    October 28, 2024, result: answering machine, no message left;

      g.    November 18, 2024, result: third party contact;

      h.    November 20, 2024, result: answering machine, no message left; and

      i.    November 21, 2024, result: answering machine, no message left.

Beam Dec. at ¶ 16; *see* Ex. 1.

8.    Unifin used calling systems supplied by Unifin's vendor, DialConnection, LLC ("DialConnection"), to place all calls to the -5249 Number. Beam Dec. at ¶ 17.

9.    The calling systems used for Unifin's calls to the -5249 Number are DialConnection's Enterprise and MobileComply systems. Beam Dec. at ¶ 18; *see also*

Declaration of Keith Larson of DialConnection, LLC (hereinafter the "Larson Dec.") at ¶ 5.

10. The DialConnection systems do not have the ability or the capacity to produce a telephone number using a random or sequential number generator. Larson Dec. at ¶ 7. There are no features that can be activated or deactivated that allows a DialConnection customer to produce random or sequential numbers within the systems. *Id.*

11. The DialConnection systems do not have the ability or the capacity to store a telephone number created using a random or sequential number generator. Larson Dec. at ¶ 8. There are no features that can be activated or deactivated that allows a DialConnection customer to store random or sequential numbers within the systems. *Id.*

12. The DialConnection systems cannot create or randomize phone numbers. Larson Dec. at ¶ 9. To be called, a phone number must be found on a valid account in Unifin's system of record in order for the phone number to be imported and eligible to be called. Larson Dec. at ¶ 10; Beam Dec. at ¶19.

13. The DialConnection systems dial telephone numbers from a defined list of numbers imported from Unifin's system.  Larson Dec. at ¶ 10.

14. Unifin is unable to modify or alter the DialConnection systems in any way. Larson Dec. at ¶ 11.

15. Unifin does not use "spoofed" telephone numbers when placing calls. Beam Dec. at ¶ 20. All outbound numbers used to place Unifin's calls are provisioned to Unifin by DialConnection and are solely for Unifin's use. *Id.*

5

16.     Only 2 of Unifin's calls to the -5249 Number were answered. Beam Dec. at ¶ 21; Ex. 1.

17.     The first answered call to the -5249 Number occurred on October 11, 2024. Beam Dec. at ¶ 22; Ex. 1 at Unifin0002 (*see* note entry "10/11/24 14:35 HSE Third Party Contact 4055195249); **Exhibit 3**, October 11, 2024 Call Recording produced as Bates No. Unifin0007[2]; **Exhibit 5**, Transcript of October 11, 2024 Call Recording.

18.     During the October 11, 2024 call, Plaintiff did not identify himself. Ex. 3; Ex. 5. Plaintiff did not tell Unifin's agent that it was calling the wrong number for the third-party debtor. *Id*. Plaintiff did not ask Unifin to stop calling. *Id*.

19.     The second answered call to the -5249 Number occurred on November 18, 2024. Beam Dec. at ¶ 23; Ex. 1 at Unifin0004 (*see* note entry "11/18/24 10:35 HSE Third Party Contact 4055195249: HE CANT HEAR ME); **Exhibit 4**, November 18, 2024 Call Recording produced as Bates No. Unifin0008[3]; **Exhibit 6**, Transcript of November 18, 2024 Call Recording.

---

[2] The call recording at Exhibit 3 is being supplied to the Court via hand delivery on a USB drive submitted contemporaneously with the filing of this Motion. *See* Notice of Conventional Filing submitted contemporaneously with the Motion. The call recording at Exhibit 3 is being served to Plaintiff via email and on a USB drive sent via U.S. Mail with a hard copy of this Motion and its exhibits.

[3] The call recording at Exhibit 4 is being supplied to the Court via hand delivery on a USB drive submitted contemporaneously with the filing of this Motion. *See* Notice of Conventional Filing submitted contemporaneously with the Motion. The call recording at Exhibit 4 is being served to Plaintiff via email and on a USB drive sent via U.S. Mail with a hard copy of this Motion and its exhibits.

20.     During the November 18, 2024 call, Plaintiff did not identify himself. Ex. 4; Ex. 6. Plaintiff did not tell Unifin's agent that it was calling the wrong number for the third-party debtor. *Id*. Plaintiff did not ask Unifin to stop calling. *Id*.

21.     As a debt collector subject to the Fair Debt Collection Practices Act, Unifin is required to avoid disclosing debts to third-parties and therefore has a business and legal interest to avoid placing calls to random or sequentially generated telephone numbers because those numbers are unlikely to be associated with the consumer that Unifin is attempting to contact. Beam Dec. at ¶ 24.

22.     Plaintiff admits in discovery he received only 4 calls from Unifin at the -5249 Number on (1) October 11, 2024, (2) October 23, 2024, (3) October 28, 2024, and (4) November 18, 2024. *See* **Exhibit 8**, Plaintiff's Untimely Responses to Unifin's Discovery Requests, at p. 4, Response to Interrogatory No. 8.

23.     On March 12, 2025, through counsel, Unifin served Unifin's Discovery Requests via e-mail and U.S. Mail to Plaintiff, which included Requests for Admissions ("RFAs"). *See* Declaration of Whitney L. White (hereinafter the "White Dec.") at ¶ 2, and **Exhibit 7**, Unifin's Discovery Requests to Plaintiff.

24.     Plaintiff failed to answer, object, or otherwise respond within 30 days as required by the Federal Rules of Civil Procedure; thus, the RFAs are deemed admitted.[4]

---

[4] On April 24, 2026, Plaintiff served untimely Discovery Responses to Unifin's Counsel via e-mail including Responses to the RFAs. White Dec. at ¶ 5. However, at that point, all objections had been waived and the RFAs were deemed admitted pursuant to Federal Rule of Civil Procedure 36. Plaintiff has never sought to set aside the deemed admissions as required by Federal Rule of Civil Procedure 36. *See* Docket, *passim*.

White Dec., at ¶ 4; Fed. R. Civ. P. 36.  Plaintiff did not seek an extension of time to respond.

*Id.*

25.    Plaintiff, therefore, admitted the following facts:

a.    Unifin did not violate any provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.

b.    Plaintiff has no evidence Unifin used an automatic telephone dialing system.

c.    Plaintiff has no evidence Unifin used equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

d.    Plaintiff has no evidence Unifin made a call to [him] using an artificial or prerecorded voice.

e.    Plaintiff did not suffer any actual damages as a result of Unifin's conduct.

f.    Plaintiff did not visit an emergency room, hospital, or see a doctor as a result of Unifin's conduct.

g.    Plaintiff did not talk to a mental health professional as a result of Unifin's conduct.

h.    Plaintiff did not suffer any physical injury as a result of Unifin's conduct.

i.    Plaintiff has no evidence that Unifin's actions were intentional.

j.    Plaintiff never asked Unifin to stop calling.

> k.   Plaintiff was not the subscriber or regular user of the -5249 Number at all relevant times.
>
> l.   Plaintiff has no evidence that Unifin acted willfully or knowingly in making the subject calls.

White Dec. at ¶ 2; Ex. 7.

22.   Plaintiff did not issue Initial Disclosures under Fed. R. Civ. P. 26(a)(1). White Dec. at ¶ 6.

23.   Plaintiff did not identify any testifying witnesses by the June 1, 2026 deadline set by the Court. White Dec. at ¶ 7; *see* Docket, *passim*.

## II.   PROCEDURAL HISTORY AND STAGE OF THE PROCEEDINGS

On December 23, 2024, Plaintiff (a resident of Tallahassee, Florida) initiated this lawsuit against Unifin in the District Court in and for Oklahoma County, Oklahoma. Unifin timely removed the case to this Honorable Court. [doc. 1.]

On February 26, 2025, Unifin filed its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2), (b)(3), and (b)(6). [doc. 8.] After briefing was completed, on August 28, 2025, the Court granted Unifin's Motion to Dismiss and ordered Plaintiff to move for leave to file an amended complaint that stated a claim, and complied with the Court's Local Rules and the Federal Rules of Civil Procedure. [doc. 15.]

On September 9, 2025, Plaintiff filed his Motion for Leave to File First Amended Complaint, and Unifin did not oppose the Motion. [docs. 16 and 17.] On October 8, 2025, Plaintiff's First Amended Complaint was filed into the record. [doc. 19.] Unifin moved to dismiss Plaintiff's First Amended Complaint on jurisdictional grounds pursuant to Fed. R.

Civ. P. 12(b)(2) and (b)(3). [doc. 20.] The Court denied Unifin's second motion to dismiss on January 6, 2026 [doc. 24], and on January 20, 2026, Unifin filed its Answer and Affirmative Defenses to the First Amended Complaint [doc. 26].

Plaintiff's First Amended Complaint brings 2 causes of action against Unifin. [doc. 24.] In Count I, Plaintiff alleges Unifin violated § 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.*, by "using an ATDS to call Plaintiff's cell phone without prior express consent" and the alleged violations were "willful or knowing, as [Unifin] failed to scrub its call list using the FCC's RND, LexisNexis verification services, or Somos RealAgent, despite knowing the risks of calling reassigned numbers." *Id.* at ¶¶ 15-18. In Count II, Plaintiff brings a claim under the Oklahoma state law invasion of privacy tort of intrusion upon seclusion alleging "[Unifin's] intentional, nonconsensual calls intruded upon Plaintiff's seclusion in a manner highly offensive to a reasonable person, disrupting his solitude and causing distress through repeated, deceptive contacts." *Id.* at ¶¶ 19-21.

Specifically, Plaintiff alleges some time prior to receiving the first call from Unifin on October 11, 2024, Plaintiff obtained the -5249 Number, and the phone number was "reassigned to Plaintiff after being permanently disconnected from the prior subscriber." [doc. 24 at ¶¶ 6, 11.] Plaintiff claims he received 4 calls from Unifin at the -5249 Number on (1) October 11, 2024 (call received while Plaintiff was in Oklahoma City), (2) October 23, 2024 (call received while Plaintiff was in Florida), (4) October 28, 2024 (call received while Plaintiff was in Florida), and (5) November 18, 2024 (call received while Plaintiff was in Florida). *Id.* at ¶¶ 6-7. Plaintiff alleges, "[t]he calls were attempts to collect a

10

consumer debt owed by a previous subscriber to the phone number, not Plaintiff[,]" and that "Plaintiff did not owe any debt to [Unifin] or its clients and never provided express consent for these calls." *Id.* at ¶ 9. Plaintiff claims "[e]ach call was made using an automatic telephone dialing system ("ATDS"), as evidenced by a noticeable pause or delay (approximately 2-3 seconds) after Plaintiff answered before a live agent spoke, indicating the call was placed in a queue by automated equipment[]" and "[t]he calls also lacked meaningful caller ID information[.]" *Id.* at ¶¶ 8, 10 ("[Unifin] spoofed local 405-area code numbers to make the calls appear local to Plaintiff, deceiving him about the caller's identity and origin."). Plaintiff claims Unifin's calls "disrupted Plaintiff's peace, caused emotional distress including anxiety and frustration for the deceptive spoofing (which mimicked potential local threats), and wasted Plaintiff's time investigating the caller. The calls were highly offensive to a reasonable person, especially given their frequency over a short period and the lack of any prior relationship." *Id.* at ¶ 13. Plaintiff seeks to recover TCPA statutory damages, actual and punitive damages for his Oklahoma state law claim, an injunction enjoining Unifin from placing further calls to him, and fees and costs. *Id.* at p. 6.

A Scheduling Order was entered on February 26, 2026 setting a deadline of July 1, 2026 for the Parties to file motions for summary judgment. [doc. 29.] The Parties conducted written discovery but have not conducted depositions. Discovery closes on August 3, 2026.

Unifin timely filed a Final List of Witnesses [doc. 34] and timely filed a Final Exhibit List [doc. 39]. Neither party designated any expert witnesses. *See* Docket, *passim.* Plaintiff did not file a Final List of Witnesses by the Court-ordered deadline on June 1, 2026. *Id.* On June 16, 2026, based on material misrepresentations and false statements to

11

the Court, Plaintiff was allowed to file late a Final Exhibit List [doc. 37].[5] On June 29,

2026, Unifin timely filed its Objections to Plaintiff's Final Exhibit List. [doc. 40.]

On June 16, 2026, Plaintiff also filed an untimely motion seeking leave to file a

Second Amended Complaint to add the vendor that supplies Unifin's calling system as a

---

[5] On June 15, 2026, the day his Final Exhibit List was due, Plaintiff filed a Motion seeking a 14-day extension of time. [doc. 33.] The basis for this requested extension was "so that the parties may continue [settlement] discussions without the added pressure of an imminent exhibit list deadline." *Id*. at ¶ 3. Plaintiff admitted, at the time he filed the motion, he had not conferred with Unifin's counsel and told the Court he would be "providing notice of this Motion to defense counsel today, **concurrently with its filing** . . . and will **promptly advise** the Court if Defendant's position is one of opposition." *Id*. at ¶ 6 (emphasis added). Plaintiff sent the motion for extension from Florida via FedEx on Saturday, June 13 at 11:44 a.m. ET/10:44 a.m. CT. *See* Unifin's Objections to Plaintiff's Exhibit List at doc. 40, Ex. 1. Plaintiff did not attempt to confer with Unifin's Counsel or serve the motion until 9:21 p.m. ET/8:21 p.m. CT on June 13 – 10 hours after depositing the motion with FedEx and certainly not "concurrently" with filing as claimed. *See id.* at Ex. 2. Unifin's Counsel promptly responded to Plaintiff at 1:00 p.m. CT on Sunday, June 14, advising Plaintiff that Unifin was opposed to the extension and the 5 reasons for Unifin's opposition. *See id.* Plaintiff was aware at the time he filed the motion the parties' settlement discussions were at an impasse and Unifin had requested referral for a settlement conference with the Magistrate Judge, due to Plaintiff's behavior, unfair threats of sanctions, harassment of Unifin's counsel, and the slanderous statements made to Unifin's counsels' law partners. Plaintiff has not attempted to discuss settlement with Unifin's counsel since June 10th. Further, Plaintiff was previously warned by this Honorable Court to comply with the Court's Local Rules and Judge Palk's Rules when filing motions, and that submitting documents on the due date by mailing the document to the Clerk does not meet the filing deadline. *See* doc. 24, fn. 2 ("Plaintiff is warned that future filings that are not timely received in the mail by the Clerk of the Court will be considered untimely and may not be considered by this Court."). Last, despite being fully aware of Unifin's counsel's opposition on June 14, Plaintiff never advised the Court of the opposition. The Court denied the motion, but Plaintiff effectively got what he wanted through a *sua sponte* extension until June 23, a decision that was based on Plaintiff's significant misrepresentations to this Honorable Court regarding (1) the status of settlement negotiations, and (2) when Plaintiff would provide notice to Unifin's counsel seeking to confer, along with plaintiff's rote failure to promptly advise the Court of Unifin's position and opposition. Plaintiff's misrepresentations to the Court have also been raised in Unifin's Objections to Plaintiff's Final Exhibit List filed on June 29, 2026, and Unifin contends the Court should disallow Plaintiff's untimely Final Exhibit List and Plaintiff's use of the exhibits listed therein based on Plaintiff's actions and bad faith when seeking the extension. *See, e.g.,* doc. 40.

defendant in this action. [doc. 36.]  Unifin will timely file its opposition to plaintiff's

motion for leave on July 1.

Unifin now timely moves for summary judgment on all claims.

### III.    <u>SUMMARY OF ARGUMENT</u>

Plaintiff's TCPA claim fails because Plaintiff lacks evidence that Unifin used an

ATDS to place the calls at issue. To the contrary, all evidence in the record makes clear

the calls were specific, targeted to the -5249 Number, and, pursuant to binding Supreme

Court precedent and this Court's precedent, made with equipment that was not an ATDS

because the system did not use a random or sequential number generator to produce or

store telephone numbers. As Plaintiff bears the burden to prove the use of an ATDS at trial,

the Court should grant Unifin summary judgment and dismiss with prejudice Plaintiff's

TCPA claim.

Likewise, Plaintiff's Oklahoma intrusion upon seclusion claim fails as a matter of

law because, as the Northern District of Oklahoma confirmed in *Salmon v. CRST*

*Expedited, Inc.*, Unifin's 4 calls over a 5-week period "would not constitute such a

substantial intrusion in a person's privacy that a reasonable person would have found the

conduct highly offensive." *Salmon v. CRST Expedited, Inc.*, No. 14-CV-0265-CVW-TLW,

2016 U.S. Dist. LEXIS 670, *15 (N.D. Okla. Jan. 4, 2016), *reconsideration denied*.  And,

Plaintiff admits he has no damages as a result of Unifin's calls. *See* Ex. 7. Accordingly, the

Court should grant Unifin summary judgment and dismiss Plaintiff's intrusion upon

seclusion claim.

13

## IV.    ARGUMENT AND AUTHORITIES

Summary judgment is governed by Federal Rule of Civil Procedure 56. The Court should award summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the nonmoving party. *Id*. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id*. at 255.

The moving party bears the initial burden of informing the Court of the basis for the motion and identifying parts of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322. While the moving party must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co*., 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). If the movant carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671;

14

*see also* Fed. R. Civ. P. 56(c)(1)(A). "Furthermore, the non-movant has a burden of doing 'more than simply showing there is some metaphysical doubt as to the material facts.'" *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). Instead, the inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993).

Ultimately, summary judgment is appropriate when the plaintiff fails to make a sufficient showing to establish the existence of an essential element of their case on which they bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322 (If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.).

Here, there is no genuine issue of any material facts, Unifin has met its burden, Plaintiff cannot as a matter of law establish essential elements of his claims, and Unifin is entitled to summary judgment.

## A.    Plaintiff's TCPA Claim Fails

Plaintiff claims Unifin's calls were made using an ATDS in violation of § 227(b)(1)(A)(iii) of the TCPA. Plaintiff's argument is neither consistent with the plain

15

language of the TCPA, the purpose of the TCPA, nor binding U.S. Supreme Court precedent.

At a high level, the TCPA was enacted to address "unrestricted telemarketing." *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Congress passed the TCPA to balance "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade." Tel. Consumer Prot. Act of 1991, Pub L. No. 102-243, § 2(9) (1991). The TCPA is not meant to thwart legitimate business efforts.

Section 227(b)(1)(A)(iii) of the TCPA prohibits any person "to make any call . . . using an automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service" without consent. 47 U.S.C. § 227(b)(1)(A)(iii). To prevail on his TCPA claim, plaintiff must prove that Unifin (1) called a cellular telephone number, (2) using an automatic telephone dialing system, and (3) without the recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii); *Trupia v. Bob More Enters., L.L.C.*, No. CIV-25-0568-HE, 2025 U.S. Dist. LEXIS 280435, *7 (W.D. Okla. Aug. 5, 2025), *affirmed* 2026 U.S. App. LEXIS 15379 (10th Cir. 2026) (citing *Hunsinger v. Alpha Cash Buyers, LLC*, No, 3:21-CV-1598-D, 2021 U.S. Dist. LEXIS 209119, at *3 (N.D. Tex. Oct. 29, 2021)). Whether Unifin used an ATDS, and, more importantly, what constitutes an ATDS, is at the heart of Plaintiff's claim.

An "automatic telephone dialing system" is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The definition of an ATDS was clarified by the Supreme Court in its 2021 decision *Facebook,*

16

*Inc. v. Duguid*, where the High Court found that "[t]o qualify as an [ATDS,] a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook v. Duguid*, 592 U.S. 395, 399 (2021). The Court clarified the phrase "using a random or sequential number generator" modified ***both*** the words "produce" and "store." *Id*. The Court emphasized this was critical to avoid an expansive, virtually limitless interpretation of an ATDS which "would capture virtually all modern cell phones, which have the capacity to 'store . . . telephone numbers to be called' and 'dial such numbers.' . . . The TCPA's liability provisions, then, could affect ordinary cell phone owners in the course of commonplace usage, such as speed dialing or sending automated text message responses." *Id*. at 406.

As the Supreme Court confirmed, a calling system violates the TCPA when it **uses** a random or sequential number generator to contact customers, not simply because it has the potential to store telephone numbers using a random or sequential number generator. *Id*. at 404. This Court followed the Supreme Court's *Duguid* decision last year in *Trupia*, confirming "'whether storing or producing numbers to be called, the equipment in question ***must use*** a random or sequential number generator.'" *Trupia*, 2025 U.S. Dist. LEXIS 280435, at \*\*7-8 (W.D. Okla. Aug. 5, 2025) (quoting *Duguid*, 592 U.S. at 404) (emphasis added); *see also Anthony v. Nat'l Republican Cong. Comm.*, No. 24-3052, 2025 U.S. App. LEXIS 24961, \*4 (3d Cir. 2025) ("A necessary element of a TCPA claim for misuse of an automatic telephone dialing system is the actual use of – not simply the capability to use – a random or sequential number generator."); *Arora v. Midland Credit Mgmt., Inc.*, No. 15-

17

cv-6109, 2023 U.S. Dist. LEXIS 4189, *22 (N.D. Ill. Jan. 10, 2023); *Basham v. Midland Funding, LLC*, No. 4:15-cv-30, 2022 U.S. Dist. LEXIS 69857, *21 (E.D. Mo. Apr. 15, 2022), *affirmed* 2023 U.S. App. LEXIS 283 (8th Cir. 2023).

In *Trupia*, the Court granted the defendant's motion to dismiss the plaintiff's TCPA claim because "[t]here are no facts for the court to reasonably infer that the equipment had the capacity to either store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Trupia*, 2025 U.S. Dist. LEXIS 280435, at *8. The Court went on to find: "it is apparent from the facts that have been alleged that plaintiff cannot establish that defendant used an ATDS to send the text messages. . . . [D]ialing systems 'us[ing] a pre-existing list of telephone numbers that are not automatically or randomly generated, but are drawn from other sources, . . .' are not implicated by the TCPA." *Id.* (quoting *Soliman v. Subway Franchisee Advertising Fund Trust, LTD*, 101 F.4th 176, 183 (2d Cir. 2024)). "An ATDS for purposes of TCPA liability 'is one that *generates* telephone numbers.'" *Id.* (emphasis added) (quoting *Soliman*, 101 F.4th at 181; citing *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1231 (9th Cir. 2022); *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 881-82 (3d Cir. 2022) (holding section 227b(1)(A)(iii) not violated where autodialing system did not rely on "random or sequential-number generation" to call plaintiffs; it called them from "specific, curated borrower lists"); *Beal v. Outfield Brew House, LLC*, 29 F.4th 391, 393 (8th Cir. 2022) (holding that "an automated marketing system that sends promotional text messages to phone numbers randomly selected from a database of customers' information" is not an ATDS within the meaning of the TCPA)).

18

Under Supreme Court precedent in *Duguid*, this Court's analysis in *Trupia*, and the post-*Duguid* case law cited above, Plaintiff's TCPA claim fails as a matter of law.

Here, the only evidence in the record establishes that Unifin obtained the -5249 Number from TransUnion as a number to contact the third-party debtor relating to the debt. Beam Dec. at ¶ 13; Ex. 2. It is undisputed Unifin obtained the -5249 Number from TransUnion, and not from a random or sequential number generator. Beam Dec. at ¶¶ 13-14; Ex. 2

Moreover, Plaintiff has no evidence that Unifin used random or sequential number generation to place the calls, and Plaintiff has no evidence of any potential or theoretical capacity the equipment used by Unifin to place the calls had to randomly or sequentially generate numbers. The reason for this failure is clear – it is because there is no random or sequential number generation being used by a debt collector like Unifin trying to contact a unique consumer at a specific telephone number regarding a particular debt.

It is undisputed the systems used for Unifin's calls to the -5249 Number are DialConnection's Enterprise and MobileComply systems. Beam Dec. at ¶ 18; Larson Dec. at ¶ 5. While the calling systems have different names, neither is an ATDS as defined by the TCPA post-*Duguid*.

DialConnection's systems do not have the ability or the capacity to produce a telephone number using a random or sequential number generator. Larson Dec. at ¶ 7. DialConnection's systems do not have the ability or capacity to store a phone number created using a random or sequential number generator. Larson Dec. at ¶ 8. The DialConnection systems cannot create or randomize phone numbers. Larson Dec. at ¶ 9.

To be called, a phone number must be found on a valid account in Unifin's system of record in order for the phone number to be imported and eligible to be called. Larson Dec. at ¶ 10; Beam Dec. at ¶ 19. In other words, the -5249 Number was dialed from a defined list of numbers imported from Unifin's system. Beam Dec. at ¶ 19; Larson Dec. at ¶ 10. Unifin cannot alter or change the calling systems in any way. Larson Dec. at ¶ 11.

On top of this, Plaintiff, through the RFAs that were deemed admitted, admits the following facts fatal to his TCPA claim:

1.  Unifin did not violate any provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*

2.  Plaintiff has no evidence Unifin used an automated telephone dialing system.

3.  Plaintiff has no evidence Unifin used equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

White Dec. at ¶ 2 and Ex. 7. These admissions alone are sufficient to grant summary judgment for Unifin on Plaintiff's TCPA claim.

Additionally, Unifin provides the Court with undisputed evidence in this case that (1) Unifin obtained the -5249 Number from TransUnion TLO as a good contact number for the third-party debtor, so the number was not generated using a random or sequential number generator; and (2) Unifin used calling systems to place calls to the -5249 Number from a pre-existing list of telephone numbers of Unifin debtors, and the systems do not have the ability or capacity to produce or store a phone number created using a random or

sequential number generator. Under the binding precedent of the Supreme Court and this Court in *Trupia*, Unifin did not violate the TCPA when calling Plaintiff.

Because there are no genuine issues of material fact the Plaintiff's TCPA claim fails as a matter of law, the Court should enter judgment in Unifin's favor.

**B.      Plaintiff's Intrusion Upon Seclusion Claim Fails**

Plaintiff brings a claim under Oklahoma state law for intrusion upon seclusion. While Plaintiff asserts a claim under Oklahoma state law, Plaintiff is not a resident of Oklahoma and only received 1 of the calls at issue in Oklahoma.

The Oklahoma Supreme Court adopted Restatement (Second) of Torts § 652B and set forth two elements of the intrusion upon seclusion tort: (1) a nonconsenual intrusion, (2) that was highly offensive to a reasonable person. *Gilmore v. Enogex, Inc*., 1994 OK 76, 878 P.2d 360, 366 (Okla. 1994). "This tort is not available for every intrusion upon a person's privacy, and the Oklahoma Supreme Court has noted that '[t]here is simply no room in the framework of our society for permitting one party to sue on the event of every intrusion into the psychic tranquility of an individual.'" *Mousavi v. John Christner Trucking, LLC*, 487 F. Supp. 3d 1194, 1203 (N.D. Okla. 2020) (quoting *Munley v. ISC Financial House, Inc*., 1978 OK 123, 584 P.2d 1336, 1338 (Okla. 1978)). "An intrusion occurs only when 'an actor believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act.'" *Id*. (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1221 (10th Cir. 2003)). "Oklahoma courts refer to Restatement (Second) of Torts §652B in considering the scope of invasion of privacy torts, and the

21

Restatement provides the following guidance as to the 'highly offensive' element of the tort of invasion of privacy by intrusion upon a person's seclusion:

> 'There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as a result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.'"

*Salmon v. CRST Expedited, Inc.*, No. 14-CV-0265-CVW-TLW, 2016 U.S. Dist. LEXIS 670, \*\*14-15 (N.D. Okla. Jan. 4, 2016), *reconsideration denied* (quoting Restatement (Second) of Torts §652B cmt. d (1977)).

In *Salmon*, the plaintiff claimed autodialed telemarketing calls to his cell phone from entities he had no personal or business relationship were an invasion of privacy by intrusion upon his seclusion. *Id.* at \*\*2, 13. The Court disagreed. The Court granted summary judgment for the defendant, awarded the defendant sanctions against the plaintiff under Rule 11, and dismissed plaintiff's intrusion upon seclusion claim, holding "receiving four calls over [a] nine-month period would not constitute such a substantial intrusion in a person's privacy that a reasonable person would have found the conduct highly offensive." *Id.* at \*15; *see also Ammons v. Diversified Adjustment Serv.*, No. 2:18-cv-06489-ODW, 2019 U.S. Dist. LEXIS 175842, at \*\*19-20 (C.D. Cal. Oct. 9, 2019) (granting summary judgment for defendant where defendant placed 3-5 debt collection calls per day, holding "[t]he calls were not so persistent or frequent that a reasonable juror could find they amount to hounding[]," and "[t]he evidence presented by both parties confirms that DAS's conduct

22

during the five answered calls was objectively professional. No DAS agent made threats or used abusive language. They identified themselves and informed [plaintiff] they were calling about her debt. Each of the five conversations lasted one minute or  less before [plaintiff] ended the call, and [plaintiff] presents no evidence that the conversations were upsetting[.]"); *see also Marseglia v. JP Morgan Chase Bank*, 750 F.Supp.2d 1171, 1177 (S.D. Cal. 2010) (granting motion to dismiss intrusion upon seclusion claim where 50 calls allegedly occurred in one week holding, "this Court is not convinced that the number of calls in itself can be considered highly offensive above a speculative level."); *Oppenheim v. I.C. Sys.*, 695 F.Supp.2d 1303, 1310 (M.D. Fla. 2010) (finding 35-40 calls over 3 months insufficient to "rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion.").

Plaintiff by his own admission (1) is a resident of Florida, not Oklahoma; (2) received 4 calls total over a 5-week period; (3) received only 1 call while in Oklahoma; and (4) received 3 calls while in Florida. *See* doc. 19 at ¶¶ 4, 6, and 7; Ex. 8. Further, Plaintiff, through the RFAs that were deemed admitted, admits the following facts:

1. Plaintiff did not suffer any actual damages as a result of Unifin's conduct.

2. Plaintiff did not visit an emergency room, hospital, or see a doctor as a result of Unifin's conduct.

3. Plaintiff did not talk to a mental health professional as a result of Unifin's conduct.

4. Plaintiff did not suffer any physical injury as a result of Unifin's conduct.

5. Plaintiff has no evidence that Unifin's actions were intentional.

23

6.  Plaintiff never asked Unifin to stop calling.

7.  Plaintiff has no evidence that Unifin acted willfully or knowingly in making the subject calls.

White Dec. at ¶ 2; Ex. 7. These admissions alone are sufficient to defeat Plaintiff's intrusion upon seclusion claim.

Nevertheless, the undisputed evidence in this case provided by Unifin confirms: (1) Unifin placed calls to the -5249 Number because it believed the number belonged to the third-party debtor Unifin was attempting to reach to collect the debt owed to Unifin's creditor-client; (2) only 2 of Unifin's calls were answered; (3) Plaintiff never identified himself to the Unifin agents; (4) Plaintiff never told Unifin's agents he was not the debtor they were trying to reach; (5) Plaintiff never told Unifin's agents it was calling the wrong number for the debtor they were trying to reach; and (6) Unifin's agents were professional during the 2 answered calls, never demanded payment from Plaintiff, and did not use profanity, threats, or abusive language. *See* Beam Dec. at ¶¶ 22-23; Exs. 3, 4, 5, and 6.

*Salmon* is directly on point and nearly identical to this case. Unifin's 4 calls over a 5-week period trying to reach the debtor to collect the debt owed, were made for a lawful purpose, "were not so persistent or frequent that a reasonable juror could find they amount to hounding[]," and "would not constitute such a substantial intrusion in a person's privacy that a reasonable person would have found the conduct highly offensive." *Salmon*, 2016 U.S. Dist. LEXIS 670, at *15; *Ammons*, 2019 U.S. Dist. LEXIS 175842, at **19-20. And, Plaintiff admits he has no damages as a result of Unifin's calls. *See* Ex. 7. Accordingly, the Court should dismiss Plaintiff's intrusion upon seclusion claim.

24

## V.    CONCLUSION AND PRAYER

For the reasons stated above, there are no genuine issues of material fact. Plaintiff cannot present evidence to meet his burden of proof at trial. Therefore, summary judgment should be granted in Unifin's favor and this Court should enter judgment in Unifin's favor and against Plaintiff on all claims.

WHEREFORE, PREMISES CONSIDERED, Defendant Unifin, Inc. respectfully requests the Court grant Unifin's Motion for Summary Judgment and for such other and further relief to which Unifin has shown itself justly entitled.

Respectfully Submitted,

*/s/ Whitney L. White*
Whitney L. White
TX Bar No. 24075269
*Admitted Pro Hac Vice*
SESSIONS, ISRAEL & SHARTLE, LLC
5700 Granite Pkwy., Suite 260
Plano, Texas 75024
Telephone: (214) 741-3001
Facsimile: (214) 741-3098
Email: wwhite@sessions.legal

Kerry R. Lewis (OBA #16519)
Rhodes, Hieronymus, Jones,
Tucker & Gable, PLLC
P.O. Box 21100
Tulsa, Oklahoma 74121
Telephone: (918) 582-1173
Facsimile: (918) 592-3390
Email: klewis@rhodesokla.com

*Attorneys for Defendant,*
*Unifin, Inc.*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2026, a copy of the foregoing was served via Email

and U.S. Mail upon the following:

Cristian Ioszpe
203 Lonesome Woods Road
Tallahassee, Florida 32305
Telephone: (850) 567-3770
Email: cioszpe@gmail.com
*Plaintiff pro se*

/s/ *Whitney L. White*
Whitney L. White

26