**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CRISTIAN IOSZPE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:25-cv-00098-SLP |
| | § | |
| UNIFIN, INC., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT, UNIFIN, INC.'S, RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND TO
JOIN DIALCONNECTION, LLC AS A DEFENDANT**

Defendant, Unifin, Inc. ("Unifin"), through counsel and pursuant to the Federal
Rules of Civil Procedure, submits this Response opposing Plaintiff, Cristian Ioszpe's
("Plaintiff"), untimely and futile Motion for Leave to File a Second Amended Complaint
and to Join DialConnection, LLC as a Defendant [doc. 36] (the "Motion"). Unifin
respectfully shows the Court as follows:

## I.      INTRODUCTION

On the eve of the close of discovery and with Unifin's summary judgment motion
pending, Plaintiff seeks leave to file a Second Amended Complaint and add the vendor that
supplies the calling system, DialConnection, LLC ("DialConnection"), as a co-defendant.
As discussed below, Plaintiff's Motion must be denied because there is no good cause to
amend, Plaintiff's amendment is futile, and brought in bad faith and for purposes of
harassing Unifin and DialConnection.

## II.      BACKGROUND AND PROCEDURAL HISTORY

1

On December 23, 2024, Plaintiff (a resident of Tallahassee, Florida) initiated this lawsuit against Unifin in the District Court in and for Oklahoma County, Oklahoma. Unifin timely removed the case to this Honorable Court. [doc. 1.]

On February 26, 2025, Unifin filed its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2), (b)(3), and (b)(6). [doc. 8.] After briefing was completed, on August 28, 2025, the Court granted Unifin's Motion to Dismiss and ordered Plaintiff to move for leave to file an amended complaint that stated a claim, and complied with the Court's Local Rules and the Federal Rules of Civil Procedure. [doc. 15.]

On September 9, 2025, Plaintiff filed his Motion for Leave to File First Amended Complaint, and Unifin did not oppose the Motion. [docs. 16 and 17.] Therefore, on October 8, 2025, Plaintiff's First Amended Complaint was filed into the record. [doc. 19.] Unifin moved to dismiss Plaintiff's First Amended Complaint on jurisdictional grounds pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(3). [doc. 20.] The Court denied Unifin's second motion to dismiss on January 6, 2026 [doc. 24], and on January 20, 2026, Unifin filed its Answer and Affirmative Defenses to the First Amended Complaint [doc. 26].

Plaintiff's First Amended Complaint brings 2 causes of action against Unifin. [doc. 24.] In Count I, Plaintiff alleges Unifin violated § 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.* by "using an ATDS to call Plaintiff's cell phone without prior express consent" and the alleged violations were "willful or knowing, as [Unifin] failed to scrub its call list using the FCC's RND, LexisNexis verification services, or Somos RealAgent, despite knowing the risks of calling reassigned numbers." *Id.* at ¶¶ 15-18. In Count II, Plaintiff brings a claim under the

Oklahoma state law invasion of privacy tort of intrusion upon seclusion alleging "[Unifin's] intentional, nonconsensual calls intruded upon Plaintiff's seclusion in a manner highly offensive to a reasonable person, disrupting his solitude and causing distress through repeated, deceptive contacts." *Id.* at ¶¶ 19-21.

A Scheduling Order was entered on February 26, 2026 setting a deadline of March 27, 2026 for the parties to seek leave to amend pleadings or add parties. [doc. 29.] Motions for Summary Judgment are due July 1, 2026 and discovery closes on August 3, 2026. *See* doc. 29.

On March 26, 2026, Plaintiff filed an unopposed motion seeking a 30-day extension of his deadline to amend and join parties – the extension was granted, making Plaintiff's new deadline to amend or join parties April 27, 2026. [doc. 31, 32.]

On March 10, 2026, Unifin timely served its Initial Disclosures under Rule 26(a)(1). Unifin disclosed at that time and based on the information available to it, it believed plaintiff, a corporate representative of Unifin, and any individuals disclosed by plaintiff, any other party, or learned of through discovery may have relevant information. Plaintiff did not serve initial disclosures when due on March 10, and in fact, Plaintiff has never served Unifin with Rule 26(a)(1) Initial Disclosures. *See* White Dec. in support of Unifin's Motion for Summary Judgment ("MSJ") at ¶ 6 [doc. 42-8.]

On March 12, 2026, Unifin served Plaintiff with its first set of discovery requests. *Id*. at ¶ 2; Ex. 7 to Unifin's MSJ [doc. 42-9.]  Plaintiff failed to answer, object or otherwise respond to Unifin's Discovery Requests by April 13, 2026. *Id*. at ¶ 4.

Plaintiff's extended deadline to amend or join parties came and went on April 27, 2026. During the 2-plus months between the parties' Rule 26(f) conference and Plaintiff's extended amendment deadline, Plaintiff did not serve Unifin with written discovery requests. On May 11, 2026 (2 weeks after his amendment deadline), Plaintiff sought written discovery from Unifin. On June 10, 2026, Unifin timely served its responses to Plaintiff's discovery requests and its First Amended Initial Disclosures. On June 30, 2026, Unifin served its amended and supplemental responses to Plaintiff's discovery requests.

On June 16, 2026, Plaintiff filed this untimely Motion. [doc. 36.]  The Court ordered Unifin to file its opposition to the motion or leave by July 1. [doc. 38.] Earlier today,  Unifin filed its Motion for Summary Judgment. [docs. 41 and 42.] Unifin now timely files its opposition to plaintiff's motion for leave to amend his Complaint and join DialConnection.

### III.    ARGUMENT AND AUTHORITIES

#### A.    Standard of Review.

"After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 71 F.3d 1230, 1240 (10th Cir. 2013) (citing *Pumpco, Inc. v. Schenker Int'l Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)).

Rule 15 provides that if outside the permitted time to amend as a matter of course— a party may amend its pleading only with the opposing party's written consent or the court's leave, and that courts "should freely give leave [to amend a complaint] when justice

4

so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend is not automatic; it is within the Court's discretion.

The Supreme Court in *Foman v. Davis* outlined specific factors that may justify denying leave to amend, including (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by prior amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. 371 U.S. 178, 182 (1962). The *Foman* factors are consistently applied by courts within the Tenth Circuit. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)).

When the motion also involves the joinder of additional defendants, Rule 20(a)(2) provides additional specific criteria that must be met. Defendants may be joined if (1) the right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences, and (2) there is a question of law or fact common to all defendants. Fed. R. Civ. P. 20. Courts must evaluate whether these criteria are met and whether the joinder would cause prejudice, delay, or other procedural complications. *State Distributors, Inc. v. Glenmore Distilleries Co.,* 738 F.2d 405 (1984).

**B.    No Good Cause for Amendment and Plaintiff's Delay.**

Courts have often found untimeliness alone a sufficient reason to deny leave to amend, "especially when the party filing the motion has no adequate explanation for the delay." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018); *Frank*, 3 F.3d at 1365-66 (listing cases). Under Rule 16, the moving party must

demonstrate "good cause" for modifying the scheduling order before the court evaluates the motion under Rule 15(a)'s more lenient standard. Fed. R. Civ. P. 16(b)(4). The party moving for leave to amend has the burden to give an "adequate explanation for any delay." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019). "If [the movant] fail[s] to show good cause under Rule 16(b) there is no need for the Court to move on to the second step of the analysis, *i.e.*, whether [the movant] [has] satisfied the requirements of Rule 15(a)." *Id.* at 990 (citing *Carriker v. City & Cty. of Denver*, No. 12-cv-02365-WJM-KLM, 2013 U.S. Dist. LEXIS 71491, *2 (D. Colo. May 16, 2013)). Good cause requires showing the amendment deadline could not be met despite the movant's diligent efforts. *Gorsuch,* 71 F.3d at 1240 (citing *Pumpco, Inc.*, 204 F.R.D. at 668).

Plaintiff claims he could not have amended or sought to add DialConnection by his extended April 27, 2026 deadline because he did not receive Unifin's discovery responses until June 10, 2026. However, discovery in this case opened on February 24, 2026 and is set to close on August 3, 2026. Unifin served its initial disclosures timely on March 10, 2026. Plaintiff never raised any issue with the disclosures, and Plaintiff has never served his own initial disclosures. Plaintiff did not seek to obtain information from Unifin in discovery until May 11, 2026 – 2 weeks after his extended amendment deadline passed. Plaintiff failed to act diligently in seeking discovery and Plaintiff's carelessness or failure to proceed promptly with the case are insufficient bases upon which to establish good cause. *Tesone*, 942 F.3d at 989. The information was knowable to Plaintiff prior to the amendment deadline, but Plaintiff did not seek the information; therefore, Plaintiff has failed to establish good cause, and the Motion must be denied.

**C.**     <u>**Amendment is Futile.**</u>

"While Rule 15 provides that leave to amend a complaint shall be freely given when justice so requires, a district court may refuse to allow amendment if it would be futile." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. . . . [t]he futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Plaintiff's amendment does not seek to add new causes of action. Rather, Plaintiff seeks to add a new defendant – DialConnection, LLC – and the following additional factual allegations:

- Plaintiff generically ascribes the conduct complained of to "Defendants" and refers to "Defendants" throughout the Second Amended Complaint;
- That prior to the telephone number at issue being reassigned to Plaintiff, calls were made that resulted in a disconnect/dead air/triple-tone result [doc. 36-1 at ¶¶ 9 and 10];
- The platform used to place the calls at issue is "MobileComply" and DialConnection is the entity with technical knowledge of the system [doc. 36-1 at ¶ 16];

- Includes references to DialConnection's website that MobileComply as a feature is "designed specifically to address TCPA regulations regarding how telephone numbers are stored and processed," one that "ensures that numbers are never stored on a dialer or randomly dialed" [doc. 36-1 at ¶ 17];
- More references to DialConnection's website and its Contact Center platform with "outbound predictive dialing" [doc. 36-1 at ¶ 18];
- "Unifin provided DialConnection with the debtor account information, including the Subject Number, that the MobileComply platform then dialed. DialConnection placed and provisioned the calls to Plaintiff on Unifin's behalf, and Unifin directed, accepted, and retained the benefit of DialConnection's calling[]" [doc. 36-1 at ¶ 19];
- "DialConnection is directly liable as the maker and initiator of the calls: it operated the MobileComply platform that placed the calls . . . and was so involved in placing the calls as to have initiated them" [doc. 36-1 at ¶ 26]; and
- "Unifin and DialConnection are each also vicariously liable for the calls under common-law agency principles" [doc. 36-1 at ¶ 27].

These new factual allegations (1) significantly misconstrue information provided to Plaintiff in Unifin's discovery responses; and (2) have no bearing on Plaintiff's TCPA and Oklahoma intrusion upon seclusion claim. Therefore, the amendment is futile.

As discussed in Unifin's summary judgment brief [doc. 42] Plaintiff's TCPA claim fails because Plaintiff lacks evidence that Unifin used an ATDS to place the calls at issue. To the contrary, all evidence in the record makes clear the calls were specific, targeted to the -5249 Number, and, pursuant to binding Supreme Court precedent and this Court's precedent, made with equipment that was not an ATDS because the system did not use a random or sequential number generator to produce or store telephone numbers. Likewise, Plaintiff's Oklahoma intrusion upon seclusion claim fails as a matter of law because, as the Northern District of Oklahoma confirmed in *Salmon v. CRST Expedited, Inc.*, Unifin's 4 calls over a 5-week period "would not constitute such a substantial intrusion in a person's privacy that a reasonable person would have found the conduct highly offensive." *Salmon*

*v. CRST Expedited, Inc*., No. 14-CV-0265-CVW-TLW, 2016 U.S. Dist. LEXIS 670, \*15 (N.D. Okla. Jan. 4, 2016), *reconsideration denied*. And, Plaintiff admits he has no damages as a result of Unifin's calls. *See* RFAs deemed admitted at Ex. 7 to Unifin's motion for summary judgment, doc. 42-9.

Section 227(b)(1)(A)(iii) of the TCPA prohibits any person "to make any call . . . using an automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service" without consent. 47 U.S.C. § 227(b)(1)(A)(iii). To prevail on his TCPA claim, plaintiff must prove that Unifin (1) called a cellular telephone number, (2) using an automatic telephone dialing system, and (3) without the recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii); *Trupia v. Bob More Enters., L.L.C.*, No. CIV-25-0568-HE, 2025 U.S. Dist. LEXIS 280435, \*7 (W.D. Okla. Aug. 5, 2025), *affirmed* 2026 U.S. App. LEXIS 15379 (10th Cir. 2026) (citing *Hunsinger v. Alpha Cash Buyers, LLC*, No, 3:21-CV-1598-D, 2021 U.S. Dist. LEXIS 209119, at \*3 (N.D. Tex. Oct. 29, 2021)). Plaintiff's allegations about "spoofing" caller id numbers and calls that occurred before he obtained the number at issue are irrelevant to the claim.

The definition of an ATDS was clarified by the Supreme Court in its 2021 decision *Facebook, Inc. v. Duguid*, where the High Court found that "[t]o qualify as an [ATDS,] a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Duguid*, 592 U.S. 395, 399 (2021). The Court clarified the phrase "using a random or sequential number generator" modified ***both*** the words "produce" and "store." *Id*. As the Supreme Court confirmed, a calling system violates the TCPA when it

9

**uses** a random or sequential number generator to contact customers, not simply because it has the potential to store telephone numbers using a random or sequential number generator. *Id*. at 404.

This Court followed the Supreme Court's *Duguid* decision last year in *Trupia*, confirming "'whether storing or producing numbers to be called, the equipment in question **_must use_** a random or sequential number generator.'" *Trupia*, 2025 U.S. Dist. LEXIS 280435, at \*\*7-8 (W.D. Okla. Aug. 5, 2025) (quoting *Duguid*, 592 U.S. at 404) (emphasis added). In *Trupia*, the Court granted the defendant's motion to dismiss the plaintiff's TCPA claim because "[t]here are no facts for the court to reasonably infer that the equipment had the capacity to either store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." Trupia, 2025 U.S. Dist. LEXIS 280435, at \*8. The Court went on to find: "it is apparent from the facts that have been alleged that plaintiff cannot establish that defendant used an ATDS to send the text messages. . . . [D]ialing systems 'us[ing] a pre-existing list of telephone numbers that are not automatically or randomly generated, but are drawn from other sources, . . .' are not implicated by the TCPA." *Id*. (quoting *Soliman v. Subway Franchisee Advertising Fund Trust, LTD*, 101 F.4th 176, 183 (2d Cir. 2024)). "An ATDS for purposes of TCPA liability 'is one that *generates* telephone numbers.'" *Id*. (emphasis added) (quoting *Soliman*, 101 F.4th at 181; citing *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1231 (9th Cir. 2022); *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 881-82 (3d Cir. 2022) (holding section 227b(1)(A)(iii) not violated where autodialing system did not rely on "random or sequential-number generation" to call plaintiffs; it called them from "specific,

curated borrower lists"); *Beal v. Outfield Brew House, LLC*, 29 F.4th 391, 393 (8th Cir. 2022) (holding that "an automated marketing system that sends promotional text messages to phone numbers randomly selected from a database of customers' information" is not an ATDS within the meaning of the TCPA)).

Here, the factual allegations in Plaintiff's proposed Second Amended Complaint confirms the claim fails for the same reason this Court dismissed the TCPA claim in *Trupia* last year under Rule 12(b)(6), and should grant Unifin's pending summary judgment motion.

Similarly, amendment as to Plaintiff's intrusion upon seclusion claim is futile for the reasons discussed in Unifin's summary judgment and the Northern District of Oklahoma's ruling in *Salmon v. CRST Expedited, Inc.*, No. 14-CV-0265-CVW-TLW, 2016 U.S. Dist. LEXIS 670 (N.D. Okla. Jan. 4, 2016). In *Salmon*, the plaintiff claimed autodialed telemarketing calls to his cell phone from entities he had no personal or business relationship were an invasion of privacy by intrusion upon his seclusion. *Id*. at \*\*2, 13. The Court disagreed. The Court granted summary judgment for the defendant, awarded the defendant sanctions against the plaintiff under Rule 11, and dismissed plaintiff's intrusion upon seclusion claim, holding "receiving four calls over [a] nine-month period would not constitute such a substantial intrusion in a person's privacy that a reasonable person would have found the conduct highly offensive." *Id*. at \*15; *see also Ammons*, 2019 U.S. Dist. LEXIS 175842, at \*\*19-20 (granting summary judgment for defendant where defendant placed 3-5 debt collection calls per day, holding "[t]he calls were not so persistent or frequent that a reasonable juror could find they amount to hounding[]," and "[t]he evidence

presented by both parties confirms that DAS's conduct during the five answered calls was objectively professional. No DAS agent made threats or used abusive language. They identified themselves and informed [plaintiff] they were calling about her debt. Each of the five conversations lasted one minute or less before [plaintiff] ended the call, and [plaintiff] presents no evidence that the conversations were upsetting[.]"); *see also Marseglia v. JP Morgan Chase Bank*, 750 F.Supp.2d 1171, 1177 (S.D. Cal. 2010) (granting motion to dismiss intrusion upon seclusion claim where 50 calls allegedly occurred in one week holding, "this Court is not convinced that the number of calls in itself can be considered highly offensive above a speculative level."); *Oppenheim v. I.C. Sys.*, 695 F.Supp.2d 1303, 1310 (M.D. Fla. 2010) (finding 35-40 calls over 3 months insufficient to "rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion.").

## D.    The Second Amended Complaint Prejudices Unifin.

Prejudice is a critical factor in determining whether to grant leave to amend. But plaintiff's motion just summarily states, "[n]or will amendment unduly prejudice Unifin;" failing to address the prejudice factor at all. Courts are more likely to deny leave if the amendment would unfairly disadvantage the opposing party, such as by requiring additional discovery or delaying resolution of the case.

This lawsuit has been going on for 1.5 years and is on the eve of resolution with Unifin's pending summary judgment motion [doc. 41-42] discovery closing on August 3, 2026, the parties' agreement to attend a settlement conference in July, and a trial setting coming up in September. Expanding this case to add a new defendant would amount to a

12

"do over" that would require vacating the existing deadlines and establishing a new case schedule for pleadings, motion practice, and additional discovery that will consume more time and result in significantly more attorneys' fees and expenses for claims that clearly fail under the law.

**E.      Plaintiff's Bad Faith and Harassment.**

Plaintiff's Motion only addresses the *Foman* factors of undue delay, bad faith and dilatory motive in passing that they exist, but fails to actually make any arguments as to how they have been satisfied. Unifin addressed plaintiff's undue delay in § II(A) above. Unifin now turns to Plaintiff's bad faith in seeking leave to amend.

If the court finds the motion to amend is made in bad faith or with an improper motive, such as to harass the opposing party or delay proceedings, leave may be denied. Courts properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a "moving target" in order to "salvage a lost case by untimely suggestion of new theories of recovery." *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001). Likewise, leave should be denied when plaintiff seeks "knowingly delay[] raising [a]n issue until the 'eve of trial.'" *Walters v. Monarch Life Ins. Co.*, 57 F.3d 899, 903 (10th Cir. 1995). "Bad faith may be inferred if the proposed amendment contradicts the original pleading, such that the two cannot be reconciled, or if the party seeks leave to amend for an improper purpose." *Graff v. Aberdeen Enterprises II, Inc.*, No. 4:17-CV-606-CVE-JFJ, 2018 U.S. Dist. LEXIS 160879, 2018 WL 4517468, at *4 (N.D. Okla. Sept. 20, 2018). Furthermore, "a motion to amend may be denied where the amendment is interposed for the purpose of delay, such as where a party intentionally refrained from asserting the

13

amendment until it became evident to it that the opposing party's motion for summary judgment was likely to be sustained." 61A Am Jur.2d Pleading §730.

The same day he filed the proposed amendment, Plaintiff sent via e-mail a threatening and harassing letter to DialConnection's President and COO, Keith Larson, stating he would engage in harassing and vexatious litigation tactics, and making slanderous statements regarding the undersigned counsel.  It is clear from this behavior, Plaintiff seeks to amend and add DialConnection solely to harass DialConnection and Unifin, especially where the amendment is futile.

## IV.    CONCLUSION AND PRAYER

For the reasons discussed above, Plaintiff's Motion seeking leave to amend his compliant months after the deadline to do so and on at the conclusion of discovery and when summary judgment is pending because the claims fail as a matter of law, is dilatory, made in bad faith, and futile.

WHEREFORE, PREMISES CONSIDERED, Defendant, Unifin, Inc., respectfully requests the Court deny Plaintiff's Motion For Leave to Amend and Join DialConnection, LLC as a Defendant, and for such other and further relief to which Unifin has shown itself justly entitled.

Respectfully Submitted,

*/s/ Whitney L. White*
Whitney L. White
TX Bar No. 24075269
*Admitted Pro Hac Vice*
SESSIONS, ISRAEL & SHARTLE, LLC
5700 Granite Pkwy., Suite 260
Plano, Texas 75024

14

Telephone: (214) 741-3001
Facsimile: (214) 741-3098
Email: wwhite@sessions.legal

Kerry R. Lewis (OBA #16519)
Rhodes, Hieronymus, Jones,
Tucker & Gable, PLLC
P.O. Box 21100
Tulsa, Oklahoma 74121
Telephone: (918) 582-1173
Facsimile: (918) 592-3390
Email: klewis@rhodesokla.com

*Attorneys for Defendant,*
*Unifin, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2026, a copy of the foregoing was served via Email

and U.S. Mail upon the following:

Cristian Ioszpe
203 Lonesome Woods Road
Tallahassee, Florida 32305
Telephone: (850) 567-3770
Email: cioszpe@gmail.com
*Plaintiff pro se*

/s/ *Whitney L. White*
Whitney L. White

15